IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-02306-WJM-NYW

**JOHN J. EDSON,**

Plaintiff,

v.

**HCC LIFE INSURANCE COMPANY,**

Defendant.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL**

**SUMMARY JUDGMENT**

---

COMES NOW the Plaintiffs, above-named, by and through his attorneys, the

Law Office of Samuel G. Livingston, P.C., and sets forth the following Opposition to

Defendant's Motion For Partial Summary Judgment as follows:

**I. FACTS**

Attached hereto as **Exhibit A** is the Affidavit of Doctor James M. Yeash, D.O.,

Plaintiff's primary physician since 2008. See **Exhibit A**, at paragraph 1. Doctor Yeash

states that, during the course of treating Mr. Edson, that the patient demonstrated

elevated triglycerides (elevated fat levels in the blood) which resulted in Mr. Edson

being placed on a variety of medications to address high triglyceride counts during the

course of treatment. See Paragraph 2, of **Exhibit A**. Dr. Yeash's affidavit indicates

that Mr. Edson demonstrated excessive triglyceride counts far above normal which

1

brought about the need for treatment by way of various forms of prescription medication to address the elevated triglyceride issue. Id.

Dr. Yeash indicates that, during the course of his treatment of Mr. Edson, he did not make any findings or observations which suggested excessive or problematic use of alcohol by Mr. Edson. Dr. Yeash indicates that he has never made any findings or conclusions to suggest that Mr. Edson is anything other than a social drinker and there has never been an observed need to modify his behaviors surrounding drinking. See **Exhibit A**, at Paragraph 3.

Dr. Yeash is familiar with the circumstances surrounding Mr. Edson's hospitalization for acute pancreatitis. See **Exhibit A**, at Paragraph 4. Dr. Yeash states that pancreatitis can be caused by: a) alcohol, b) high triglycerides or fats in the blood, c) hereditary disorders, d) certain medications, and e) in some cases the cause is unknown. See **Exhibit A**, at Paragraph 5. More importantly, in this setting, Dr. Yeash states as follows:

> "6. Individuals react to the effects of alcohol differently, and the level of alcohol consumption necessary to cause the onset of a pancreatitis episode may vary from individual to individual. Onset of a pancreatitis episode may be brought about by consumption of alcohol in the context of an individual who could be deemed an "alcoholic", while at the same time consumption of alcohol in lesser amounts by an individual who is not considered a problem drinker might also trigger the onset of an acute pancreatitis episode as well."

See **Exhibit A**, at Paragraph 6. Dr. Yeash states, as referenced in the Defendant's brief, that it would be advisable for Mr. Edson to avoid drinking immediately after the episode of acute pancreatitis in June of 2014 since alcohol would tend to inflame the pancreas, just as it would be wise and advisable for Mr. Edson not to eat fatty foods

and maintain lower triglyceride readings through appropriate use of medication similar to avoiding alcohol. See **Exhibit A**, at Paragraph 7.

The Defendant's brief makes reference to statements in Plaintiff's records surrounding hospitalization at Boulder County Community Hospital referencing the term "alcoholic pancreatitis" which was the suspected origin of the pancreatitis condition which can be triggered by alcohol. While the Defendant utilizes that terminology in the records to suggest that Plaintiff is himiself an alcoholic, as opposed to an organ being affected by alcohol in a given way, Dr. Yeash addresses that issue as follows:

> "8. While it is true that an alcoholic may suffer from pancreatitis as result of the condition of alcoholism, one does not necessarily have to be an alcoholic to experience an episode of acute pancreatitis triggered by alcohol. The absorption of alcohol into the body and hence into the pancreas may well give rise to a condition in certain circumstances identified as "alcoholic pancreatitis", but this is not to suggest that the individual who had alcohol in their system causing the condition would necessarily be characterized as an "alcoholic" simply because alcohol was consumed in some quantity which brought about the onset of the pancreatitis attack. This is particularly true in the context of an individual such as Mr. Edson who has a history of elevated triglycerides which may well have been the cause of the episode in question."

See **Exhibit A**, at Paragraph 8. Dr. Yeash concludes, to a reasonable degree of probability, that the acute pancreatitis experienced by Mr. Edson in June of 2014 "cannot be attributed to 'alcoholism' of the patient as it simply cannot be stated that an episode of pancreatitis necessarily serves as the basis to reverse diagnose a patient to constitute an alcoholic or problem drinker. There is no evidence Mr. Edson was an alcoholic before this incident, and he was in fact receiving treatment before this event

for a known cause of pancreatitis, that is elevated triglycerides." See **Exhibit A**, at Paragraph 9.

Mr. Edson was prescribed a variety of medications for his elevated triglycerides during the years prior to and the immediately before the pancreatitis attack. Attached hereto as **Exhibit B** are portions of Mr. Edson's medical records which demonstrate that, going back to 2005, Mr. Edson was being treated by way of medications to reduce triglycerides including Lipitor, Zocor, Vytorin, Simvastatin, and Crestor. These medications to reduce triglycerides are part of the statin family of drugs. See **Exhibit C**, text information re prescription drug definitions. Attached hereto as **Exhibit D** is internet information surrounding how this class of drugs has brought about class action type litigation surrounding its now identified side effects. Note that, in particular, one of the known side effects arising from use of statin medications is the onset of acute pancreatitis in studies involving males.

Finally, the Defendant makes repeated reference in its brief to statements made by Mr. Edson as quoted in the various Boulder Community Hospital records. Most of the quotations involve the initial intake of the patient and also involve interviews with the patient while he was extensively sedated. Attached hereto as **Exhibit E**, is a portion of the Boulder Community Hospital medical records indicating as follows surrounding Mr. Edson's mental state at the time he was interviewed surrounding use of alcohol and his medical history:

> "At this point, he probably because of the grogginess from the narcotics will not remember this conversation and it will need to be approached again repeatedly during his hospital stay."

See **Exhibit E**, Boulder Community Hospital record of June 22, 2014.

4

Attached as **Exhibit F**, is a Boulder Community Hospital record of June 22,

2014, that is the day that Mr. Edson was initially hospitalized for the pancreatitis

condition. Note that the records specifically state that Mr. Edson was found to have

"elevated lipase" detected in his blood at the time of the emergency room admission,

i.e. elevated fat levels were noted in the blood stream at the time of admission.

Finally, attached hereto as **Exhibit G**, is an April 23, 2015 email surrounding

the denial from the Defendant's claim representative indicating that "the records

indicate significant support for alcoholism." Attached as **Exhibit H**, is a

correspondence from the Defendant dated November 19, 2015 which specifically

states that the claim is being denied on the following basis:

> Charges for the following treatments and/or services and/or supplies and/or conditions are excluded from coverage:
>
> Exclusions:
>
> 5. Alcoholism.
>
> 29. Injury resulting from being under the influence of or due wholly or partly to the effects of alcohol or drugs, other than drugs taken in accordance with treatment prescribed by a Doctor, but not for the treatment of Substance Abuse.

Also, enclosed as **Exhibit I**, is a correspondence from defense counsel of February 6,

2016 explaining that the November 19, 2015 correspondence is actually misdated,

and "in fact, this letter was sent to Mr. Edson on April 22, 2015." See **Exhibit I**, at p.2.

## II. ARGUMENT

1. New Policy Exclusion

The April 23, 2015 email, **Exhibit G** above, was written to a sales agent of the

Plaintiff explaining the nature of the denial on the day after the letter was written to the

insured setting forth the carrier's position. Consistent with the April 23, 2015 email, the actual letter sent to the insured expressing the carrier's position focused on the concept of alcoholism as the nature for why these charges were excluded, exclusively referencing Exclusion #5 stating simply that treatment for "alcoholism" is excluded. Defendant likewise cited Exclusion 29 which involves injury arising from the use alcohol.

Plaintiff incorporates by reference, as if fully set forth herein, his own Motion for Partial Summary Judgment and particularly the discussion between pages 5 and 6 identifying how the policy defines the term "injury" in the context of Exclusion 29 as an event which arises from an accident. See Policy, **Exhibit A** to Defendant's motion, at p. 18. The present motion by Defendant does not raise Exclusion No. 5 in the sense that it is arguing that pancreatitis is a form of treatment geared toward stopping the unreasonable or unwarranted consumption of alcohol, i.e. Defendant does not argue that pancreatitis  treatment is a form of treatment for alcoholism. Likewise, and as also argued in Plaintiff's own Motion for Partial Summary Judgment, the Defendant has given up on its argument that there is an applicable exclusion here resulting from "injury resulting from being under the influence of or due wholly or partially to the effect of alcohol" since injury is defined as an accident under the policy which is not involved in this fact pattern.

What the Defendant is raising in its present motion is in fact Exclusion No. 44, identified on page 18 of **Exhibit A**, the policy attached to the Defendant's motion. Exclusion 44 was never referenced as a basis for exclusion to the insured in either

April of 2015 when the Defendant claims that the letter dated November 19, 2015 was actually sent. In <u>Public Service Co. of Colorado v. Wallace & Co</u>., 955 P.2nd 564, 571 (Colo. App. 1989), the Court stated that "generally an insurer must raise (or at least reserve) all defenses to coverage within a reasonable time after learning of such defenses. When an insurer denies coverage on specific grounds it waives the right later to assert additional defenses to coverage."; <u>Halprin v. Equitable Life Assurance Society of U.S.</u> 267 F.Supp. 2nd 1030 (Colo. 2003) "an insurer should raise (or at least reserve) all defenses within a reasonable time after learning such defenses, or those defenses are waived."; <u>Jarnagin v. Bankers Life and Casualty Co.</u> 824 P.2nd 11 (Colo. App. 1991) (holding that insurer must notify insured of defenses at time of denial or remaining defenses waived); <u>see also Leland v. Travelers Indemnity Co.</u> 712 P.2nd 1060, 1064 (Colo. App. 1985). Here, the Defendant never raised the existence of Exclusion 44 and the only exclusions which are potentially viable in this case, are Exclusion 5 surrounding treatment for "alcoholism" and Exclusion 29 surrounding "injury" resulting from use of alcohol. The Defendant is conclusively estopped from raising an additional defense, raised for the first time during this litigation, to the effect that an entirely different exclusion controls the outcome of this dispute.

2.  <u>Plaintiff's Medical Condition</u>

The Defendant has supplied a variety of medical records in support of its motion without any affidavit or deposition testimony from the actual medical providers. The very records which the Defendant cites in support of its position specifically indicate that the patient was heavily sedated at the time initial history was taken and the records specifically state that the patient would probably have a difficult time

remembering the contents of the discussion even a short time after it took place. Those records make reference to "alcoholic pancreatitis". There is no question that alcohol can cause a pancreatitis attack, although per Dr. Yeash's affidavit, this can take place in the context of either a social drinker who may have a given tolerance toward alcohol, versus another individual, who may be a full blown alcoholic, who experiences an onset of pancreatitis due solely to that condition.

Here, as pointed by Dr. Yeash, the Defendant is simply attempting to reverse diagnose the patient by stating that, because of the word "alcoholic" is used relative to how an organ in Mr. Edson's body reacted to a given substance, that he himself must be characterized as an "alcoholic" simply because of that diagnosis surrounding his pancreas. Dr. Yeash's affidavit makes clear that this type of reverse reasoning is inappropriate under the circumstances. Even if alcohol was involved as the triggering factor which brought about this attack of pancreatitis, this would simply mean that alcohol effected the organ in a certain way as opposed to necessarily supporting a diagnosis as to that particular individual's use of alcohol or whether they are a problem drinker. Simply stated, pancreatitis can afflict people who are alcoholics as well as social drinkers. The condition would nevertheless be characterized as "alcoholic pancreatitis" in either setting.

Moreover, Dr. Yeash's opinions make clear that elevated triglycerides, or high levels of fat in the blood stream, are also a known cause of pancreatitis. Mr. Edson was afflicted with that condition before the pancreatitis attack, he was actively treating for that condition for years prior to and immediately before the incident, and his blood

levels at the emergency room on the day of the event showed elevated levels of fat in the bloodstream. Dr. Yeash is not aware of any basis to have diagnosed this patient as being an alcoholic before the event, and the patient was in fact actively treating for a condition which is known to cause pancreatitis when all of this occurred.

The circumstances are further affected by the fact that Mr. Edson took a variety of statin medications which are presently the origin of a variety of class action lawsuits arising from negative side effects from that class of medication. Manufacturers of the various drugs taken by Mr. Edson to address his elevated triglycerides are presently being sued due to purported product defects in those medications which had corresponding adverse affects of pancreatitis in males who took the medication while they were still widely circulated. This means that both Mr. Edson's triglyceride problem was itself a known basis to bring about a pancreatitis attack, and the very medications which he had taken in the years before the pancreatitis attack were themselves a known contributor to this condition as has now come to light, or at least is alleged as such in the various ongoing class action lawsuits. Whether or not those suits are valid in terms of establishing that the various statin medications are in fact defective, there is clearly factual evidence that individuals who took this class of medicine, particularly males, were afflicted with excessive attacks of pancreatitis.

All of these circumstances indicate that there is no basis for the Defendant's present Motion for Partial Summary Judgment as all factual inferences and conclusions must be construed in favor of non-moving party. The only evidence presented before this Court in the form of a sworn affidavit is that of Plaintiff's own

treating physician who states that there is no basis to believe that Plaintiff constituted an "alcoholic" before the events in issue. Dr. Yeash's opinion clearly points out that simple use of the phrase "alcoholic pancreatitis" is not synonymous with diagnosing a patient with alcoholism per se. The term simply applies to how alcohol effects a given organ which may come about due to social drinking. The Defendant's entire argument is based on selected references from medical records which admittedly applied to a patient who had been heavily sedated with narcotics and the records themselves indicate that the patient was cognitively impaired in the context of many discussions referenced in the medical records. There are also extensive references in the medical records to elevated triglycerides which are a cause of pancreatitis, as well as Plaintiff's own triglyceride medication causing incidents of pancreatitis.

### III. CONCLUSION

The insurer has the burden of demonstrating that policy exclusions apply in the particular circumstances of a given case. Compass Ins. Co. v. City of Littleton, 984 P.2nd 606, 614 (Colo. 1999). The insurer must show the exclusion applies in the particular case and is not subject to any other reasonable interpretation American Family Mut. Ins. Co. v. Johnson, 816 P.2nd 952, 953 (Colo. 1991). Likewise, the Defendant's burden of proof as to the exclusions is only applicable when the Defendant promptly raises exclusions at the time of denial. A claim adjustment cannot come down to a process of moving goal posts where the Defendant simply changes what the terms of the denial are as the litigation moves forward.

It is undisputed that the Defendant sent a letter to the insured in this case raising Exclusion 5 excluding treatment of alcoholism and Exclusion 29 excluding treatment for injury arising from an accident resulting from use of alcohol or drugs. Those are the only exclusions which the Defendant can raise at this point, and has the obligation to prove either of those exclusions which may apply. Per Plaintiff's own Motion for Partial Summary Judgment, the Defendant has essentially abandoned these positions and does not contend that the treatment in issue is for "alcoholism" or treatment for the purpose of controlling excessive drinking. Likewise, in neither the present motion nor in Plaintiff's own Motion for Summary Judgment does the Defendant argue the applicability of Exclusion 29 surrounding "injury" arising from the use of alcohol, because there are not circumstances involving an accident.

The Defendant has basically run out of the exclusions which were used at the time of denial, and that is the case whether the letter setting forth the exclusions is deemed to be November 18, 2015 (which it literally states) or April 22, 2015 which the Defendant now states is the true date of the letter. Whatever the date may be, the exclusions set forth in that letter are the controlling exclusions in terms of the denial, and the Defendant is now trying to expand the exclusions to number 44 which is simply not on the Defendant's denial letter. The Defendant is not at liberty to expand its defense during the course of litigation, and the obviously disruptive aspects of that strategy are demonstrated here. Plaintiff can never succeed on Summary Judgment, as he would be entitled to under the rules if there are no factual issues, if the Defendant is simply allowed to continue to change its defenses over and over again each time Plaintiff proves that existing defense is not supported by the facts.

11

Beyond the Defendant's ever changing defenses, the fact remains that there is really no support for the idea that alcoholism is involved here, and that is attested to by way of a sworn affidavit from a physician. The affidavit makes clear that the use of phrases such as "alcoholic pancreatitis" do not reverse diagnose a patient as being "alcoholic" himself which is the Defendant's reasoning. They would certainly need some direct support for the idea which is being suggested here by way of an affidavit, deposition testimony or otherwise from the physician's which the Defendant relies on. Instead, the Defendant utilizes clipped portions of the medical records in the context of an individual being admitted who was immediately placed on heavy narcotics because of the pain involved in this type of medical condition. It is not fair to Mr. Edson to be quoted, and judged by this Court, in the context of records which specifically state that he was heavily drugged, and under circumstances where the only competent evidence clearly explains how concepts such as "alcoholic pancreatitis" do not necessarily render one an "alcoholic". There is evidence that Mr. Edson suffered from a condition which is a well known cause of pancreatitis, that being elevated triglycerides, and the very medications which he had been taking for that condition have themselves been linked to pancreatitis attacks in men. These facts do not support Summary Judgment in the Defendant's favor.

WHEREFORE, Plaintiff respectfully requests this Court to deny the Defendant's Motion for Partial Summary Judgment and to grant Plaintiff's Motion for Partial Summary Judgment and for such other and further relief this Court deems just and proper.

12

RESPECTFULLY SUBMITTED March 3, 2016.

LAW OFFICE OF SAMUEL G. LIVINGSTON, P.C.

***A duly signed original is on file at the Law Office
of Samuel G. Livingston, P.C.***

/s/   Samuel G. Livingston
Samuel G. Livingston #15128
1416 Larimer Street, Suite 300
Denver, Colorado 80202
(720) 904-9805
ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, a true and correct copy of the
**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT,** was send via email on the following:

Christopher J. Shannon, Esq.
The Hustead Law Firm
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
*Attorney for Defendant*
csh@thlf.com

/S/ Tamiraa Gunsendorj
Tamiraa Gunsendorj

13